**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRANZINO, INC.,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civ. No. 20-4912** |
| | : | |
| **SENECA INSURANCE COMPANY, INC.,** | : | |
| **Defendant.** | : | |

Diamond, J.                                                        February 6, 2024

**<u>MEMORANDUM OPINION</u>**

 Branzino, Inc. a restaurant, sues its insurer, Defendant Seneca Insurance Company for Breach of Contract and Bad Faith, alleging that Seneca wrongfully refused coverage for business losses caused by COVID-19 related government closure orders.  (Compl.)  Seneca moves for summary judgment, urging that the Third Circuit's recent decision in <u>Wilson v. USI Insurance Service LLC</u> "explicitly foreclose[s] Plaintiff's claim."  57 F.4th 131 (3d Cir. 2023); (Doc. No. 26 at 2.)  I agree that because Branzino cannot show direct physical loss or damage to its insured property, <u>Wilson</u> precludes coverage, as does the Policy's Virus Exclusion.  Accordingly, I will dismiss on those alternate grounds.

**I. BACKGROUND**

 I have construed the evidence most favorably to Branzino.

**A.  Policy Provisions**

 From January 31, 2020 to January 31, 2021, Seneca insured Branzino's restaurant premises.  (Statement of Undisputed Material Facts, Doc. Nos. 11, 14 at ¶ 3.)  The Seneca Policy includes a "Business Income" provision, which applies to income losses from the suspension of operations caused by "direct physical loss of or damage to property . . . caused by a Covered Cause of Loss."  (Id. at 000044.)  It also includes an "Extra Expense" provision, which covers "necessary

1

expenses [incurred] during the period of restoration that . . . would not have [been] incurred if there had been no direct physical loss or damage to property caused by . . . a Covered Cause of Loss." (Id.)

The Policy's "Additional Civil Authority Coverage" provision protects against "loss of Business Income [sustained] and necessary Extra Expense caused by action of civil authority that prohibits access" to the premises provided that: (1) access "to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage;" and (2) the action of "civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the *Covered Cause of Loss* that caused the damage." (Id. at 000045 (emphasis added).) Covered Cause of Loss is defined as "direct physical loss unless the loss is excluded or limited in this policy." (Id. at 000025, 000058; Statement of Undisputed Material Facts, Doc. Nos. 11, 14 at ¶¶ 8-9.)

The Policy excludes from coverage damage caused by "Ordinance or Law," "Acts or decisions," or  "Virus or Bacteria." (Policy at 000055, 000058, 000061.) Under the Ordinance or Law Exclusion, Seneca will not cover losses or damage caused "directly or indirectly" by "compliance with any ordinance or law . . . whether the loss results from [] an ordinance or law that is enforced even if the property has not been damaged."  (Policy at 000058.) Under the Acts or Decisions Exclusion, Seneca will not pay for loss or damage caused by "[a]cts or decisions, including the failure to act or decide, of any person, group, organization or governmental body." (Id. at 000061.) Under the Virus or Bacteria Exclusion, Seneca will not pay for "loss or damage caused by or resulting from any virus." (Id. at 000055.)

### B.  Factual Allegations

In March 2020, Pennsylvania Governor Tom Wolf ordered the closure of nonessential

businesses to stop the spread of COVID-19.  (Doc. No. 1 Ex. 2.)  Restaurants and bars were ordered to close their dine-in facilities, but could offer "carry-out, delivery, and drive-through food and beverage service."  (Id.)  Although Branzino initially "closed the Restaurant premises . . . and ceased all business operations," it eventually restarted operations and even profited.  (Doc. No. 1 Ex. A ¶ 15; Doc. No. 14 at 14 ¶¶ 55-56.)  To recover COVID-related business losses and expenses, Branzino sought coverage from Seneca under the Policy's Business Income and Extra Expense provisions which, as I have discussed, provide coverage for "direct physical loss of" or "damage to the [insured] property."  (Doc. No. 1 Ex. A ¶ 17.)

In denying coverage, Seneca determined that: (1) Branzino's "inability to operate [its] business due to government mandates related to COVID-19 does not arise out of direct physical loss or damage to the covered premises due to a covered loss," and thus, "business income loss and/or extra expense coverage does not exist for this claim under the Policy;" (2) Branzino's claim does not relate to the Civil Authority provision because "access to the insured premises must be prohibited by action of civil authority in response to nearby property damage resulting from a Covered Cause of Loss;" (3) even if coverage existed, the Policy's Virus Exclusion provision "exclude[s] coverage for any property damage, business income loss, extra expense, or action of civil authority claim caused by or resulting from any virus;" and (4) the Policy's Acts or Decisions Exclusion provision "excludes coverage for all loss or damage caused by or resulting from acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body."  (Doc. No. 1 Ex. 3 (alterations and internal quotations omitted).)

### C.  Procedural History

Branzino brought suit in Pennsylvania state court on July 21, 2020; on November 5, 2020, Seneca removed to this Court.  (Doc. No. 1.)  On November 30, 2020, Seneca moved for summary

judgment.  (Doc. No. 10.)  Once the matter was fully briefed, I placed it in suspense pending the Third Circuit's decision in <u>Wilson</u>, a consolidated appeal (of 14 similar COVID-19-related coverage actions), in which the Circuit addressed whether under Pennsylvania law, a "business' inability to use their properties for their intended business purposes constituted 'physical loss of' property as that phrase is used in the [various insurance] policies." See <u>Wilson</u>, 57 F.4th at 140; (Doc. Nos. 10, 14, 15, 17.)  Predicting how the Pennsylvania Supreme Court would rule, the <u>Wilson</u> Court held that it did not.  <u>Wilson</u>, 57 F.4th at 140.

Taking this matter from suspense, I asked the Parties to address <u>Wilson</u>'s application here. (Doc. No. 24.)  Once again, the matter is fully briefed.  (<u>See</u> Doc. Nos. 10, 14, 15, 25, 26.)

## II.  LEGAL STANDARDS

### A.  Summary Judgment

Summary judgment is warranted if the moving party shows that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  An issue is material only if it could affect the result of the suit under governing law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

Summary judgment is also warranted when the movant shows that there is an absence of evidence to support the non-movant's case.  <u>Celotex</u>, 477 U.S. at 325.  The non-moving party "must [then] rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  <u>Berckeley Inv. Grp., Ltd. v. Colkitt</u>, 455 F.3d 195, 201 (3d Cir. 2006); <u>Est. of Smith v. Marasco</u>, 318 F.3d 497, 514 (3d Cir. 2003) (opposing party "must present affirmative evidence—whether direct or circumstantial—to defeat summary judgment"); <u>see also</u> <u>Liberty Lobby</u>, 477 U.S. at 252 ("The mere existence of a scintilla of evidence

in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.  The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.").

### B.  Policy Interpretation

In construing an insurance policy, I must, as with most contracts, "ascertain the intent of the parties as manifested by the language of the written instrument," reviewing the policy in its entirety and in accordance with the plain and ordinary meaning of its terms.  <u>Am. Auto. Ins. Co. v. Murray</u>, 658 F.3d 311, 320 (3d Cir. 2011) (quotation marks omitted) (applying Pennsylvania law); <u>Riccio v. Am. Republic Ins. Co.</u>, 705 A.2d 422, 427 (Pa. 1997).  Where the policy language is clear and unambiguous, I apply its terms as written.  <u>401 Fourth Street v. Inv'rs Ins. Group</u>, 879 A.2d 166, 171 (Pa. 2005).

Ambiguous provisions—those "reasonably susceptible of different constructions"— must be construed in favor of the insured and against the insurer.  <u>Hutchison v. Sunbeam Coal Corp.</u>, 513 Pa. 192, 519 A.2d 385, 390 (1986); see <u>Med. Protective Co. v. Watkins</u>, 198 F.3d 100, 104 (3d Cir. 1999) (applying Pennsylvania law).  I may not "rewrite the terms of a policy or give them a construction in conflict with the accepted and plain meaning of the language of the policy," or "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity."  <u>Imperial Cas. & Indem. Co. v. High Concrete Structures</u>, Inc., 858 F. 2d 128, 131 (3d Cir. 1981); <u>Madison Const. Co. v. Harleysville Mut. Ins. Co.</u>, 735 A.2d 100, 106 (Pa. 1999).  Rather, I "interpret the policy so as to avoid ambiguities and give effect to all of its provisions."  <u>Murray</u>, 658 F.3d at 321.

## III.    DISCUSSION

Under Pennsylvania law, "an insured bears the initial burden to make a *prima facie* showing that its claim falls within the policy's grant of coverage." State Farm Fire & Cas. Co. v. Est. of Mehlman, 589 F.3d 105, 111 (3d Cir. 2009) (applying Pennsylvania law).  If the insurer then denies coverage, it must show that the policy does not cover the claim or that an exclusion applies.  Id.

Branzino initially sought coverage under the Seneca Policy's "Business Income Loss and Extra Expense" provisions.  (Doc. No. 1 at 7 ¶ 17.)  It now contends for the first time that it is also entitled to coverage under the Policy's "Civil Authority Provision,"  and that Seneca's denial of coverage is barred by the doctrine of regulatory estoppel.  (Doc. No. 25 at 4.)

### A.   Wilson

Branzino urges that Pennsylvania's closure orders "caused the direct physical loss [Branzino sustained], not COVID-19."  (Doc. No. 14 at 35.)  The Wilson Court held, however, that "loss of use" caused by government COVID closure orders is not "direct physical loss" as required by the Policy language at issue here.  See Wilson 57 F.4th at 143.

In Wilson, the insured businesses—including those providing food services—"sought to recover [from their insurers] losses caused by the pandemic and the resulting government closure orders."  URBN US Retail LLC v. Zurch Am. Ins. Co., No. 21-4807, 2023 WL 4237077, at * 4 (E.D. Pa. Jun. 28, 2023).  These businesses invoked their policies' business income and extra expense provisions, which allowed coverage only for "direct physical loss or damage to" the insured properties.  Wilson, 57 F. 4th at 138.  Although the subject policies were "not all identical, [the Court could] discern no material difference[s] among them for [] purpose[s] of this dispute." Id. at 138 n.1.  Moreover, although the rulings were governed by Pennsylvania law, the Circuit

declined to certify the underlying questions to the Pennsylvania Supreme Court.  Id. at 138.

The Wilson Court first ruled that "loss of use caused by government edict and untethered to the physical condition of the premises is not a physical loss or damage to the properties" within the meaning of the subject policies.  Id. at 143.  Rather, under Pennsylvania law, "physical damage to property" means "a distinct, demonstrable, and physical alteration of its structure."  Id. at 142 (citing Port Authority of New York and New Jersey v. Affiliated FM Ins. Co., 311 F.3d 226, 235 (3d Cir. 1998)).  The insured must show that "the functionalities of their properties were nearly eliminated or destroyed, that the structures were made useless or uninhabitable, or that there was an imminent risk of either of those things happening."  Id.  That the insureds "lost the ability to use their properties for their intended business purposes because the governors of the states in which they operated issued orders closing or limiting the activities of nonessential businesses" did not mean the properties were physically damaged or destroyed.  Id.  To the contrary, the insured properties remained "intact and functional."  Id.  Functionality, the Court ruled, meant "operational utility," not "intended business purpose at or within a property that is physically unaffected."  Id. at 145.

Finally, the Wilson Court concluded that civil authority provisions did not afford coverage because such provisions required: (1) "physical loss or damage to a property *other* than the insured premises;" and (2) "that an action of civil authority prohibited access to the insured premises because of that loss or damage."  Id. at 147. (emphasis added).  Because "the closure orders merely prohibited certain uses of the buildings," the "businesses ha[d] not met either requirement."  Id.

### B.  The Seneca Policy Does Not Provide Coverage

Because Branzino (like the Wilson insureds) seeks to recover losses resulting from COVID-19 closure orders, Seneca argues that Wilson "explicitly foreclose[s Branzino's] claim."

(See, e.g., Compl. ¶¶ 15-16; Doc. No. 14 at 17; Doc. No. 26 at 2.)  Branzino responds that: the terms "physical loss" and "damage" remain ambiguous; Wilson departs from Pennsylvania case law defining "loss;" disputed issues of fact preclude summary judgment; the restaurant is entitled to Civil Authority coverage; and no Policy Exclusions apply.  I do not agree.

In Branzino's view, "physical loss" as used in the Policy can encompass "loss of use absent damage."  (Doc. No. 25 at 2.)  The restaurant offers a Pennsylvania Superior Court Panel ruling that, "at a minimum, [it is] reasonable to find that [the insured's] loss of the use of his [business] due to COVID-19 and the governmental orders equated to a direct physical loss of his property." Ungarean v. CAN, 286 A.3d 353, 356 (Pa. Super. Ct. 2022); (see Doc. No. 25 at 2.)  The Wilson Court deemed Ungarean and an inconsistent opinion authored by the same Panel "less [than] useful," and chose instead to predict how the Pennsylvania Supreme Court would decide this coverage question.  57 F.4th at 144 n.7.

I am thus obligated to follow the Wilson ruling that "loss of use of intended purpose under the circumstances presented . . . is not a physical loss of property within the meaning of the policies."  Wilson, 57 F. 4th at 143.  Like the insureds in Wilson, Branzino "lost the ability to use [its] propert[y] for [its] intended use"—dine-in services—yet remained partially open and even profited during the closure period.  Id. at 142; (Statement of Undisputed Material Facts, Doc. Nos. 11, 14 at ¶¶ 28-29.)  Moreover, the closure orders here (which were the same as those addressed in Wilson) did not alter the "physical condition of the premises . . . [they] simply prohibited the business[] from using [its] propert[y] in [a] certain way[]."  Id. at 143.  Plainly, Branzino's claims turn on the same policy language and circumstances as those addressed by the Third Circuit. Accordingly, under Wilson, the coverage Branzino seeks is precluded.

Although Branzino urges that there "are disputed issues of fact that preclude summary

judgment," it presents no apposite factual disputes.  (Doc. No. 25 at 3-4.)  For instance, it argues that:

> [T]here is disputed issue of fact as to whether the actions of the Commonwealth . . . caused Plaintiff's property to be rendered 'useless or uninhabitable.'  At the very least, there was an imminent risk of the property becoming useless or uninhabitable due to the shutdown orders.  As a result, there was the substantial reduction in use as contemplated by <u>Port Authority</u> and <u>Wilson</u>.

(Doc. No. 25 at 3-4.)  As I have discussed—and the <u>Wilson</u> Court concluded—this "disputed issue" has nothing to do with whether there was physical or structural damage to the restaurant property, or whether the property was "uninhabitable."  Indeed, it is undisputed that: (1) "restaurants could remain partially operational" during the pendency of the COVID orders; and (2) Branzino "made some profit while Governor Wolf's Order was in effect."  (Doc. No. 14 at 11.)

Branzino further argues that it is still entitled to "Additional Coverage" under the Policy's Civil Authority provision.  (Doc. No. 25 at 4.)  Like the insureds in <u>Wilson</u>, however, Branzino has failed to establish that the closure orders caused "physical loss or damage to a property other than the insured premises."  <u>Wilson</u>, 57 F. 4th at 147.  Accordingly, no "Additional Coverage" is available to Branzino.

In sum, because Branzino has failed to show that it is entitled to coverage, it has also failed to make out a prima facie coverage claim.  <u>See</u> <u>Est. of Mehlman</u>, 589 F.3d at 111; <u>see also</u> <u>Robinson v. Allstate Prop. & Cas. Ins. Co.</u>, 306 F. Supp. 3d 672 (E.D. Pa. 2018) (granting summary judgment in favor of insurer where the insured could not show coverage existed).

### C.  Exclusions

In the alternative, I conclude that Branzino's coverage claim—predicated on expenses and losses caused by the Commonwealth's COVID-related closure orders—is barred by the Policy's Virus Exclusion, which precludes payment for "loss or damage caused by or *resulting* from any

virus." (Policy at 000055 (emphasis added).)  The Exclusion applies to "all coverages under all forms and endorsements that comprise this . . . Policy."  (Id.)  Branzino urges that "because [its] losses were not caused by COVID-19 [itself, but rather the government closure orders,] and the Policy language is non-specific . . . the loss at issue should be covered because it is not particularly excluded." (Doc. No. 14 at 39.)  I disagree.

Branzino's losses undoubtedly *resulted* from COVID-19.  Courts in this Circuit have held that "a claim of loss due to governmental civil authority orders cannot circumvent the Virus Exclusion, as the closure orders were issued to stop the spread of the virus, and thus fall under the exclusion."  Abington Kids Creative Learning Ctr., Inc. v. Utica Nat'l Ins. Grp., No. 22-cv-01095, 2023 WL 2539656, at *5 (M.D. Pa. Mar. 16, 2023) (internal quotations omitted); see also Picone v. Nationwide Mutual Ins. Co., No. 21-cv-700, 2022 WL 1537351, at *6 (M.D. Pa. Apr. 27, 2022); Frank Van's Auto Tag, LLC v. Selective Ins. Co. of the Southeast, 516 F. Supp. 3d 450, 459-60 (E.D. Pa. Jan. 28, 2021).  I agree.

Branzino also urges that regulatory estoppel bars Seneca from denying coverage under the Virus Exclusion.  (Doc. No. 14. at 43.)  This doctrine requires Branzino to "plead two elements: (1) A party made a statement to a regulatory agency; and (2) Afterward, the party took a position opposite to the one presented at the regulatory agency."  Brian Handel D.M.D., P.C. v. Allstate Ins. Co., 499 F. Supp. 3d 95, 101 (E.D. Pa. 2020).  The insurer's statements to the regulatory agency "must be contrary to the insurer's position in the current litigation for regulatory estoppel to apply."  Id. (citing Hussey Copper, LTD v. Arrowood Indem. Co., 391 F. App'x 207, 211 (3d Cir. 2010)).

Branzino did not plead regulatory estoppel in its Complaint.  (See Compl.)  Rather, it raised estoppel for the first time in opposing Seneca's Motion for Summary Judgment.  (See Doc. No.

14.)  Branzino thus acknowledges that it cannot satisfy either element, and instead asks me to reopen discovery "on what Defendant said to Pennsylvania regulators to get the Virus Exclusion approved."  (Doc. No. 25 at 5.)

Branzino has waived its estoppel contention.  See Fegley Mgmt. & Energy, LLC v. Cincinnati Ins. Co., No. 20-cv-4652, 2023 WL 2364726, at * 1 n.1 (E.D. Pa. Mar. 1, 2023) ("Their inclusion of a 'theory' of regulatory estoppel in their opposition briefs is insufficient to amend because 'it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'") (citing Com. of Pa. ex re. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988); see also id. ("[T]he court will not consider the regulatory estoppel claim raised for the first time in the plaintiffs' responses to the motion to dismiss when no factual allegations supporting the theory are included in the amended complaint.").  Indeed, because Branzino did not allege that Seneca "made any arguments to the regulators . . . that discovery would be irrelevant." Moody v. Hartford Fin. Grp., Inc., 513 F. Supp.3d 496, 513 (E.D. Pa. 2021).

Moreover, even if estoppel is not waived, I will not reopen discovery in the circumstances presented.  The Third Circuit has set out what the court should consider before reopening discovery after summary judgment is sought:

> We have interpreted [Rule 56(d)] to require a party seeking further discovery in response to a summary judgment motion [to] submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained.

Pa., Dept. of Pub. Welfare v. Sebelius, 674 F.3d 139, 157 (3d Cir. 2012) (internal quotations and citations omitted)).  Branzino has not met these requirements.  Its only contention here—that its belated regulatory estoppel contention and additional discovery "may be enough to defeat [Seneca's] motion"—is not supported by affidavit, particularity, or any other explanation of why such information had not previously been sought.  (Doc. No. 14.)

11

### D.  Bad Faith

Finally, Branzino urges that Seneca displayed bad faith in denying coverage.  (See Compl.; Doc. No. 14 at 41-43 (citing 42 Pa. C.S.A. § 8371).)   As I have discussed, however, Seneca's refusal to provide coverage was appropriate. Branzino's bad faith claim thus fails.  See Kohler v. Selective Fire & Cas. Ins. Co., 632 F. Supp. 3d 649 (M.D. Pa. 2022) ("[I]f a bad-faith claim is premised solely on the denial of coverage, the claim must necessarily fail if a court finds that no coverage exists.") (citing Gallatin Fuels, Inc. v. Westchester Fire Ins. Co., 244 F. App'x 424, 435 (3d Cir. 2007)).

## IV.   CONCLUSION

Wilson makes clear that there is no coverage available to Branzino for its COVID-19 related losses.  See Wilson, 57 F.4th at 143 n.7 ("[L]ike the overwhelming majority of state and federal jurisdictions that have considered the issue, [we predict that the Pennsylvania Supreme Court] would determine that the policies here are unambiguous and do not cover the businesses' losses.").  Moreover, Seneca has shown that the Virus Exclusion applies.

I will thus grant Seneca's Motion for Summary Judgment on these alternate grounds.  (Doc. No. 10.)   In light of my decision, I will not address Seneca's contention that other Policy Exclusions bar coverage.

An Appropriate Order follows.

**BY THE COURT.**

 /s/ Paul S. Diamond
_____

Paul S. Diamond, J.

February 6, 2024